**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION**

| | |
|---|---|
| **CORY SCOTT NEWTON** | **CIVIL ACTION NO. 14-3116** |
| **VERSUS** | **JUDGE ELIZABETH ERNY FOOTE** |
| **STEVE PRATOR, SHERIFF OF CADDO PARISH, LOUISIANA, IN HIS OFFICIAL CAPACITY** | **MAGISTRATE JUDGE HORNSBY** |

### MEMORANDUM RULING

Before the Court is Defendant's Motion for Summary Judgment. [Record Document 31.] Defendant's motion seeks summary judgment on all of the Plaintiff's claims. For the reasons announced below, the Court **GRANTS** in part and **DENIES** in part Defendant's motion.

## I.    Background

Plaintiff Cory Scott Newton, a former deputy sheriff in Caddo Parish, alleges that Defendant Steve Prator, in his official capacity as the Sheriff of Caddo Parish, deprived him of his constitutional rights and violated both federal and state laws when he terminated him for refusing to sign a written reprimand.

On February 4, 2014, Mr. Newton, then a deputy assigned to the Emergency Response Team at Caddo Correctional Facility, subdued an inmate through the use of force in the course of responding to a fight between inmates. Record Document 1-3, p. 4. Two days later, Captain Kenny Sanders, the director of the Caddo Parish Sheriff's Office

("CPSO") training academy, issued a written opinion stating that based on a soundless video of incident, the use of force by Mr. Netwon on February 4 was unreasonable.  Record Document 31-3, p. 4.  In light of Captain Sanders' written opinion, Mr. Newton's superiors commenced disciplinary proceedings pursuant to the written discipline policy of CPSO.  Id. at 2.  Because Mr. Newton had received two prior warnings about the use of excessive force, section V(A)(2)(a) of the discipline policy required that his superiors write a formal reprimand explaining the infraction, any past violations, and the consequences that could follow from further violations.  Id. at 7. Section V(A)(2)(a) further required that after discussing the written reprimand with the disciplined employee, the employee, his supervisor, and the bureau commander needed to sign the reprimand.  Id. Consequently, the day after Captain Sanders issued his written opinion, two of Mr. Netwon's supervisors[1] presented Mr. Netwon with a written reprimand of the February 4 incident[2] and, after discussing its contents with him, asked for Mr. Newton to sign it.  Record Document 1-3, p. 5.  Citing his concern that he believed that his actions on February 4 were compliant with the training he had received by his superiors, Mr. Newton refused.  Id.  After consulting their superiors regarding Mr. Newton's refusal to sign the reprimand and confirming with Mr. Newton that he did not intend to sign the reprimand, Mr. Newton's supervisors convened a second meeting with Mr. Newton later that day.  Record Document

---

[1]Lieutenant Demetria Parker and Captain Rick Ferris.

[2]The reprimand described the incident as follows: "On February 4, 2014, while responding to a signal 14 [a fight], Dep. Cory Newton used unreasonable force by grabbing an inmate (that was sitting in a chair) around his neck and took him to the ground.  The inmate was not combative or resisting."  Record Document 31-3, p. 5.

31-3, p. 2.   That meeting, led by Commander Bobby Wyche, senior deputy at Caddo Correctional Facility, was recorded.  Id., ex. 5.  The recording indicates that Commander Wyche conveyed to Mr. Newton that (1) signing the reprimand acknowledged only the fact of the reprimand, and not an admission of the facts alleged, (2) Mr. Newton could correct whatever inaccuracy he saw in the reprimand in the blank "comments" section of the reprimand, and (3) he considered refusal to sign the reprimand at that point to constitute insubordination of a direct order by a superior officer, the consequence of which would be termination.  Id.  Again citing his belief that his actions complied with the training he had received, as well as his concern that the reprimand would move him to a less favorable work shift, Mr. Newton declined to sign the reprimand.  Id.  He was terminated the same day.  Record Document 1-3, pp. 6-7.

After his termination, neither Mr. Newton nor anyone in his family received a notice that he was eligible under COBRA[3] to continue health care coverage through his employer-sponsored healthcare plan for an interim period and at an interim rate.  Record Document 47-1, p. 46.  Three days after Mr. Newton's termination (February 10), employees at CPSO's personnel division notified Ameriflex, the administrator for CPSO's health plan, of Mr. Newton's termination.  Record Document 31-5, pp. 2-4.  But CPSO's notification provided Ameriflex with an address for Mr. Newton, 105 Attaway, at which Mr. Newton and his family had not lived since 2010.  Id.; Record Document 47-1, pp. 46-47.  Thus, when Ameriflex sent letters to Mr. Newton and his wife, Raelene Newton, the following day

---

[3]The Consolidated Budget Reconciliation Act of 1985, Pub. L. 99-272, Title XI, § 11016(a)(5)(C), Apr. 7, 1986, 100 Stat. 82, 271.

(February 11) notifying them of their rights to continue coverage pursuant to COBRA, the letters were addressed to 105 Attaway.  Record Document 31-5, pp. 2-4.

Mr. Newton alleges that he notified appropriate personnel at CPSO in March of 2010 of his updated address, at 223 South Parkridge.  Record Document 47-1, pp. 46-47.  To further substantiate this claim, Mr. Newton points to 2010 mailings from his health care insurer addressed to his updated address and a 2010 W-4 withholding certificate listing his updated address.  Record Document 37-5, 6-8.

After his termination, on March 3, 2014, Mr. Newton spoke to Ada Edwards, an employee in CPSO's personnel division, regarding pension matters and, according to Mr. Newton, about the status of his health coverage.  Record Document 31-4, pp. 1-3; Record Document 31-8, p. 3.  During that encounter Mr. Newton also submitted a change of address form listing his updated address at 223 South Parkridge.  Record Document 31-4, pp. 1-3.  In response to Mr. Newton's question on coverage, Ms. Edwards allegedly told Mr. Newton that she had already sent information regarding Mr. Newton's post-termination coverage options.  Record Document 31-8, p. 3.  Ms. Edwards states that other than the March 3 requested address change, the "only prior change of address submitted by Mr. Newton was submitted on February 2, 2008, and notes that his address was 105 Attaway, Shreveport, LA 71107."  Record Document 31-4.

Mr. and Ms. Newton indicate that two of their four children, Huntur and Madalyna, suffer from a rare genetic disorder called Fanconai Anemi.  Record Document 37-5, p. 2.  Ms. Netwon also states that based on the medical bills for treating Huntur and Madalyna

in years prior to 2014, he projects that the total out-of-pocket cost for treating them would be roughly $45,000.  Id. at 2-31. He does not state he has actually paid this amount or that he has been billed this amount.

The complaint also alleges that the Newton's incurred actual out-of-pocket expenses as a result of not continuing coverage through COBRA.  Record Document 1-3, 11-12 (stating that Mr. Newton and his family "incurred medical bills and expenses which would not have otherwise incurred").  Mr. Newton testified during his deposition that the Monday following his termination, he had to pay out of pocket for the treatment of two of his children for strep throat.  Record Document 31-8, p. 3.  Mrs. Newton also indicated in her deposition that on at least one occasion post-termination, she spent approximately $300 to cover medical treatment.  Record Document 31-10, p. 3.  According to the notice of continued benefits sent by Ameriflex (to the Newton's prior address), the monthly COBRA premium for continued coverage ranged from roughly $345 to $1,511, depending on how many members of Mr. Newton's family the plan were to cover.  Record Document 37-14, p. 5.

Based on the above facts, Mr. Newton brings four claims against Sheriff Prator. Record Document 1-3, pp. 9-12.  In his first three causes of action, he claims the manner in which Sheriff Prator fired him violated his constitutional rights to due process,[4] the

---

[4] Mr. Newton alleged due process violations under both the Louisiana and federal constitution.  The protections provided by the Due Process Clause of the Louisiana Constitution, La. Const. Art. I, § 2, do not exceed those provided by the Due Process Clause of the U.S. Constitution.  See State v. Smith, 614 So. 2d 778, 780 (La. Ct. App. 2d Cir. 1993) ("We find the [federal and state due process] clauses to be coextensive and to provide the same due process protection.").  The Court therefore treats Mr.

Louisiana Police Officer's Bill of Rights, and Louisiana's anti-reprisal and whistle blower statutes.  Id. at 5, 9-12.  In his fourth cause of action, he claims that Sheriff Prator violated COBRA by knowingly sending Ameriflex the wrong address for Mr. Newton when CPSO notified Ameriflex of Mr. Newton's termination.  Id. at 11-12.  Mr. Newton asserts that these constitutional and statutory violations entitle him to injunctive relief in the form of reinstatement with full back pay and expungement of the February 4 incident from CPSO's records; compensatory damages; damages for pain, suffering, mental anguish, emotional distress, embarrassment, humiliation, inconvenience, and any other loss cause by the Defendant's conduct; and reasonable attorney's fees, costs, and legal interest.  Id. at 12-13.

Sheriff Prator has moved for summary judgment on all of Mr. Newton's claims. Record Document 31, p. 1.  First, he argues that Mr. Newton's termination was not subject to the Due Process Clause of the Fourteenth Amendment because he was an at-will employee and at-will employees have no recognized property or liberty interest in their employment that is susceptible to deprivation by the state.  Record Document 31-2, p. 12. Second, he argues that his termination was not subject to the provisions of the Louisiana Police Officer's Bill of Rights because those protections do not apply to sheriff's deputies. Id. at 11.  Third, he argues that Mr. Newton fails to demonstrate as a matter of law that Sheriff Prator violated Louisiana's whistle blower statute because requiring Mr. Newton to

Newton's due process claim under the Louisiana Constitution as one in the same as his due process claim under the federal constitution.

sign the written reprimand was legal and a defendant is liable under the whistle blower statute only if he seeks reprisal against an employee for disclosing the defendant's illegal conduct.   Id. at 15-16.  Fourth, he argues that Mr. Newton is not entitled to recovery on his COBRA claim for two alternative reasons.  On the one hand, Sheriff Prator asserts that Mr. Newton fails to demonstrate as a matter of law that Sheriff Prator violated COBRA because Sheriff Prator sent Mr. Newton's notice of termination with his last known address and all that COBRA requires of an employer is to send notice to the last known address, not to ensure actual delivery. Id. at 13-14.  On the other hand, Sheriff Prator argues that even if there is still a genuine dispute of fact about whether Sheriff Prator fulfilled his COBRA notice obligations, Mr. Newton has not demonstrated that he is entitled to any damages. Id.

## II.    Summary Judgment Standard

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).  Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. If the party moving for summary judgment fails to satisfy its initial burden of

demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response.  See Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).   If the motion is properly made, however, Rule 56(c) requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).  While the nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence, Little, 37 F.3d at 1075,  Wallace, 80 F.3d at 1047, all factual controversies must be resolved in favor of the nonmovant.  Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456 (5th Cir. 2005).

## III.   Analysis

### A.  Due Process

Mr. Newton alleges that his termination by CPSO violated his due process rights. The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution forbids states or their political subdivisions from depriving persons of their life, liberty, or property without due process of law.  See U.S. Const. amend. XIV, § 1.  Thus, as a  prerequisite to any due process claim, a plaintiff must first show that he has been deprived of life, liberty, or property.  See id.; Orr v. Larkins, 610 F.3d 1032, 1034 (8th Cir. 2010).  Sheriff Prator argues that Mr. Newton has not established any property or liberty interest in his employment and therefore his termination did not trigger the due process protections of the Fourteenth Amendment.

Mr. Newton contends, however, that he had both a property and liberty in his employment with CPSO.  To establish a property interest in his public employment, Mr. Newton must show that (1) the terms of his employment contract with CPSO altered the his default status as an at-will employee, or (2) he was a permanent classified employee under a Louisiana civil service system.  See Wallace v. Shreve Mem'l Library, 79 F.3d 427, 429 (5th Cir. 1996); Collins v. Town of Zwolle, No. CIV A 06-1742, 2007 WL 2377350, at *3 (W.D. La. Aug. 10, 2007).

In order to demonstrate that he was not an at-will employee, Mr. Newton must show that he had an employment contract for a definite term or that CPSO contracted with him to fire him only for cause.  See Wallace, 79 F.3d at 429-30 (citing Leger v. Tyson Foods, Inc., 95-1055 (La. App. 3 Cir. 1/31/96), 670 So. 2d 397, 401).  Mr. Newton has presented no evidence to demonstrate either circumstance.  Further, while it is not conclusive, the CPSO discipline policy through which Mr. Newton was disciplined suggests that Mr. Newton was an at-will employee.  The "Policy" portion of the discipline policy states, "This policy does not in any way remove the basic employment at will relationship in that either Caddo Parish Sheriff's Office or the employee may terminated the relationship at any time."  Record Document 31-3, p. 6.  Mr. Newton has therefore not demonstrated that the terms of his employment contract indicated he was not an at-will employee..  See Wallace, 79 F.3d at 429; Record Document 31-3, p. 6.

Mr. Newton therefore needs to demonstrate that he was included in a civil service system.  See id.; Collins v. Town of Zwolle, No. CIV A 06-1742, 2007 WL 2377350, at *3

(W.D. La. Aug. 10, 2007).  Article X of the Louisiana Constitution sets the qualification parameters for civil service status in Louisiana.  First, all state employees and all employees of a municipality over 400,000 in population are part of the civil service system unless they meet one of the excluded employee designations, such as employees elected to office.  La. Const. art X, § 1-2.  Article X also establishes a civil service system for all police and firefighters employed by "municipalities having a population exceeding thirteen thousand and operating a regularly paid fire and municipal police department and to all parishes and fire protection districts operating a regularly paid fire department."  Id. § 16.  Though Article X permits the creation of civil service systems for city or parish employees through the legislature, local governments, or local election, policemen and firefights are ineligible for such local civil service systems.  Id. § 19.  Finally, Article X creates a civil service system for all state police.  Id. § 42.  Mr. Newton was not employed by the state, a municipality, or the state police, so he was not part of a civil service system under the Louisiana Constitution.  Mr. Newton has not offered, and the Court has not been able to find, any other authority suggesting that Caddo Parish Sheriff's deputies are part of a civil service system.  Consequently, Mr. Newton was not a part of a civil service system when he was terminated by CPSO.  Because he cannot show that he was either not an at-will employee or included in a civil service system, Mr. Newton had no property interest in his employment at the time of his termination.  See Wallace, 79 F.3d at 429-30.

But Mr. Newton also argues that the terms of his termination were so egregiously unfair that the state deprived him of a liberty interest in future employment.  To establish

this type of liberty interest, Mr. Newton must show either that he was terminated for reasons that were "(i) false, (ii) publicized, and (iii) stigmatizing to his standing reputation in his community" or that he was "terminated for a reason that was (i) false and (ii) had a stigmatizing effect such that (iii) he was denied other employment opportunities as a result." Whiting v. University of Southern Miss., 451 F.3d 339, 347 (5th Cir. 2006).  In this context, false "does not mean that the stated reason for termination was pretextual. Rather, it means that the stated reason was factually incorrect." Lindberg v. Bossier Parish Ambulance Service District, 402 Fed. Appx. 898, 902 (5th Cir. 2007).  CPSO terminated Mr. Newton because he refused to sign a written reprimand, which it considered to be subordination of a direct order.  Record Document 31-3, ex. 5.  Although Mr. Newton has argued that this reason was in effect pretext for punishing him for not agreeing to a false statement, neither party asserts that Mr. Newton did not refuse to sign the reprimand.  Mr. Newton therefore cannot as a matter of law show that the reason for his termination was false for the purpose of demonstrating a liberty interest in his employment.  See Lindberg, 402 Fed. Appx. at 902; Record Document 31-3, ex. 5.  Accordingly, Mr. Newton cannot establish that he had a liberty interest in the termination of his employment.  See Whiting, 451 F.3d at 347.

For the reasons stated above, Mr. Newton cannot show that he possessed either a property interest or a liberty interest at the time of his termination.  Consequently, his termination was not protected by the Due Process Clause of the federal constitution.  The Court therefore **GRANTS** Sheriff Prator's motion for summary judgment on Mr. Newton's

due process claim.

    B. <u>Police Officer's Bill of Rights</u>

        1. *Summary Judgment on The Prima Facie Case*

Mr. Newton alleges that his termination violated the Louisiana Police Officer's Bill of Rights.  Under Louisiana law, certain law enforcement officers are entitled to extra procedural safeguards for adverse employment actions affecting them.  <u>See</u> La. Stat. Ann. §§ 40:2531-2535.  To be eligible for this protection, Mr. Newton must fit into one of the following four classifications: (1) Louisiana State Police, (2) "Louisiana P.O.S.T. Certified Probation and Parole officers employed by the Louisiana Department of Public Safety and Corrections, Division of Probation Parole," (3) "those law enforcement officers employed by any municipality," and (4) "campus police employed at any state-supported college or university." La. Stat. Ann. § 40:2531(A).

Sheriff Prator argues that he does not qualify as a member of any of these categories.  Mr. Newton asserts, however, that he qualifies under the second classification because he is P.O.S.T. certified and his salary is supplemented by the state for work that includes the care and custody of state inmates at Caddo Correctional Facility.[5]

This argument is unpersuasive for three reasons.  First, because almost all deputy sheriffs in Louisiana are P.O.S.T.-certified or receive state supplemental pay, these

_____

[5]Mr. Newton also argues that he fits within the third category of "law enforcement officers employed by any municipality."  Record Document 47, p. 13; La. Stat. Ann. § 40:2531(A).  However, Mr. Newton provides no authority to substantiate this claim, <u>see</u> Record Document 47, p. 13, and the Court has been unable to locate the same.

classifications do little to distinguish him as being specially qualified as a P.O.S.T.-certified employee of the Department of Public Safety and Corrections.   All peace officers in Louisiana must be P.O.S.T. certified.  La. Stat. Ann. § 40:2405.  And the eligibility for supplemental state pay is much broader than the care and custody of state inmates.  La. Stat. Ann. § 40:1667.7.  Indeed, "every commissioned deputy sheriff employed on a full-time basis" that is not involved mostly in clerical work is entitled to supplemental state pay. Id. § 40:1667.7(A).  Second, the Court cannot find any case adjudicating a claim pursuant to the Louisiana Police Officer's Bill of Rights in which the plaintiff was a deputy sheriff.  Third, and most importantly, under a plain reading of the statute, Mr. Newton is not "employed" by the  Louisiana Department of Public Safety and Corrections, Division of Probation Parole, because Mr. Newton has introduced no evidence that the Department of Public Safety and Corrections exercised any control of Mr. Newton.  See Duplessis v. Warren Petroleum, Inc., 95-1794 (La. App. 4 Cir. 3/27/96), 672 So. 2d 1019,  1023 ("[T]he test in Louisiana to determine if an employer-employee relationship exists relates to "right of control . . . .").  For all of the reasons stated above, the Court finds that the Police Officer's Bill of Rights does not apply to deputy sheriffs and therefore did not apply to the termination of Mr. Newton.  The Court therefore **GRANTS** Sheriff Prator's motion for summary judgment on Mr. Newton's claim under the Louisiana Police Officer's Bill of Rights.

    C.  Louisiana Whistle Blower Statute

    Mr. Newton claims that CPSO violated Louisiana's whistle blower statute when it

fired him.   Louisiana statute prohibits an employer from taking "reprisal against an employee who in good faith, and after advising the employer of the violation of law" either "[d]iscloses or threatens to disclose a workplace act or practice that is in violation of state law" or "[o]bjects to or refuses to participate in an employment act or practice that is in violation of law."   La. Stat. Ann. § 23:967(A).   Sheriff Prator argues that Mr. Newton cannot as a matter of law demonstrate that Sheriff Prator violated Louisiana's Whistle Blower statute because Mr. Newton has not presented any evidence that anyone at CPSO involved in his termination violated state law.   In response, Mr. Newton asserts that because he believed that the written reprimand was false, being ordered to sign it amounted to falsification of a public record.   See La. Stat. Ann. § 14:133.

The Court is not persuaded that signing the written reprimand would have amounted to a falsification of a public record.   Even assuming, *arguendo*, that the written reprimand's conclusion was false, Mr. Newton was told by the supervisors ordering him to sign the reprimand that he could include any objection to the written reprimand's findings in its comments section.   Record Document 31-5, ex 5.   Mr. Newton was therefore free to cure whatever falsity the reprimand contained.   The Court therefore finds that as a matter of law Mr. Newton is not entitled to a claim under Louisiana's whistle blower statute. The Court therefore **GRANTS** Sheriff Prator's motion for summary judgment on Mr. Newton's claim under the Louisiana's Whistle Blower Statute.

    D.  <u>COBRA</u>

       1.  *Liability*

Mr. Newton claims that CPSO's failure to send notice of his continued health care coverage to his updated address violated COBRA.  When an employer that provides an employee with health coverage subject to COBRA terminates that employee, the employer must so notify the administrator of the employee's health care plan within 30 days of the termination.  29 U.S.C. § 1666 (a)(2) (2012).  The administrator then has 15 days to notify the employee of his right to continue coverage after the termination, albeit under new terms. § 1666(a)(4).  Sheriff Prator argues that CPSO did not violate COBRA because they sent the administrator notice of Mr. Newton's termination with Mr. Newton's last-known address within 30 days of his termination.

       To satisfy the notice requirement of § 1666, an employer does not need to ensure actual delivery.  <u>Degruise v. Sprint Corp.</u>, 279 F.3d 333, 336 (5th Cir. 2002). Instead, § 1666 requires that an employer "operate in good faith and . . . use means 'reasonably calculated' to reach plan participants." <u>Id.</u>  Sending mail first class to the employee's last-known address is good faith on behalf of an employer giving notice under § 1666. <u>See</u> <u>Lawrence v. Jackson Mack Sales, Inc</u>. 837 F. Supp. 771, 783 (S.D. Miss. 1992).  But an employer does not act in good faith if it sends notice to an address that the employer knows the employee no longer lives.  <u>See Torres-Negron v. Merck & Co., Inc.</u>, 488 F.3d 34, 45 (1st Cir. 2007) (holding that whether the defendant operated in good faith by sending notice to an address at which the plaintiff no longer lived, when the plaintiff

alleged that she gave the employer a new address before termination, could not be resolved on summary judgment).

There is a genuine dispute about whether CPSO operated in good faith in giving Amerifax notice of Mr. Newton's termination.  See id. Mr. Newton has alleged that he gave CPSO an updated address in 2010 and therefore CPSO knew that they were sending Amerifax an old address when they notified it of his termination.  Although Sheriff Newton has argued that there is no evidence to support Mr. Newton's allegation, this does not refute as a matter of law Mr. Newton's contention.  Therefore, there remains a genuine issue of material fact as to good faith.

1. *Damages*

Because of the COBRA violation, Mr. Newton alleges that he is entitled statutory penalties under 29 U.S.C. § 1332(c), compensatory damages, which includes pain and suffering, mental anguish, and emotional distress, attorney's fees and costs.  Sheriff Prator argues that Mr. Newton has waived statutory damages because he did not properly disclose them in his pleadings or initial discovery disclosures.  He also argues that compensation for Mr. Newton's COBRA claim is limited to compensatory damages without any extra-contractual damages such as pain and suffering.  Moreover, Sheriff Prator asserts that as a matter of law Mr. Newton has provided insufficient evidence to demonstrate any compensatory damages.

Mr. Newton is not entitled to statutory damages.  If an administrator violates the notice provisions of § 1666, the administrator may be liable for statutory penalties of up

to $100 per day per covered beneficiary.  29 U.S.C. § 1132(c).  But § 1132(c) only applies to administrators that violate their obligations under § 1666, not to employers or their obligations under § 1666.  Id. (providing statutory damages where an "administrator . . . fails to meet the requirements of paragraph (1) or (4) of section 1666 of this title").  Because Ameriflex, and not CPSO, was the administer of the Mr. Newton's policy, CPSO cannot be liable for statutory damages under § 1132(c).  See id.; see also Ward v. Bethenergy Mines, Inc., 851 F. Supp. 235, 238-40 (S.D.W. Va. 1994) (relieving an administrator of all liability and not applying § 1132(c) statutory penalties to the employer where employer alone violated notice provisions of § 1666).  Because Mr. Newton has alleged that his employer, Sheriff Prator, and not his administrator, Ameriflex, violated § 1666, he is not entitled to damages.  Sheriff Prator's argument regarding waiver of this penalty is therefore moot.

Instead, the damages for an employer's failure to notify an administrator under § 1666(a)(2) is found in ERISA's general damages provision, 29 U.S.C. § 1132(a)(3)(B), which provides in pertinent part that a civil action may be brought "by a participant, beneficiary, or fiduciary [(A) to enjoin a practice that violates ERISA] or (B) to obtain other equitable relief (i) to redress such violation or (ii) to enforce any provisions of this subchapter." 29 U.S.C. § 1132(a)(3)(B).  Although this statutory language provides courts with broad discretion in granting equitable damages, in the context of a COBRA notice violation, courts generally limit recovery to compensatory damages as measured by the extra medical expenses the plaintiff has incurred post-termination because he was not

notified of his right to continue coverage minus deductibles and premiums that the plaintiff would have had to pay under COBRA to continue coverage. <u>Sonnichsen v. Aries Marine Corp.</u>, 673 F. Supp. 2d 466, 474 (W.D. La. 2009) ("When COBRA violations result in the loss of a qualified beneficiary's insurance coverage, courts have interpreted ERISA's civil enforcement statute as entitling the qualified beneficiary to compensatory damages in an amount equal to medical expenses minus deductibles and premiums that the beneficiary would have had to pay for COBRA coverage."); <u>Phillips v. Riverside, Inc.</u>, 796 F.Supp. 403, 411 (E.D.Ark.1992) ("The purpose of the civil enforcement provisions of COBRA is, above all, to put plaintiffs in the same position they would have been in but for the violation."); <u>Ward</u>, 851 F. Supp. at 240 (citing cases holding the same).[6]   Because Mr. Newton has alleged a violation of COBRA's notice provision, his damages are limited to the post-termination medical expenses he incurred minus the COBRA premium he would have had to pay to cover those expenses. <u>See</u> <u>Ward</u>, 851 F. Supp. at 240.  If Mr. Newton can show that he is entitled to compensatory damages, he may also be entitled to attorney's fees and costs. <u>See</u> 29 U.S.C. § 1132(g).

---

[6]Other equitable relief may also be appropriate to compensate the plaintiff for his actual monetary loss where damages alone are insufficient.  In <u>Ward</u>, the plaintiff incurred significant out-of-cost medical expenses because she was not notified of her rights of continued coverage under COBRA.  851 F. Supp. 236.  The out-of-pocket chargers overwhelmed the plaintiff's ability to pay, so many medical bills became delinquent, which adversely affected her credit score.  <u>Id.</u> at 240.  In addition to awarding the plaintiff compensatory relief, the court, relying on its equitable powers, the court ordered the defendant to contact the health care providers and tell them that the delinquent bills "occurred as a result of a legitimate contractual dispute between the parties, and as such, the creditors of Plaintiff's medical bills should be instructed to correct their reports to credit bureaus to note Plaintiff's delinquencies were not his fault."  <u>Id.</u>

There is still a dispute of material fact as to whether Mr. Newton has demonstrated compensatory damages. There is scant evidence in the record, at least insofar as the Court can find, demonstrating any out-of-pocket expenses by Mr. Newton or his family for healthcare after his termination.   Mr. Newton testified during his deposition that the Monday following his termination, he had to pay out of pocket for the treatment of two of his children for strep throat.  Record Document 31-8, p. 3.  Mrs. Newton also indicated in her deposition that on at least one occasion post-termination, she spent approximately $300 to cover medical treatment.  Record Document 31-10, p. 3.  These two allegations are all the Court can find to demonstrate compensatory damages.  Nonetheless, because the monthly premium under COBRA was as low as $345 per month, and because Mr. Newton has put forth testimony that he and his family may have spent more than that amount, the Court cannot rule that as a matter of law Mr. Newton is not entitled to relief on his claim that Sheriff Newton violated COBRA.  The Court therefore **DENIES** Sheriff Prator's motion for summary judgment on Mr. Newton's claim under COBRA.

## IV.  Conclusion

For the foregoing reasons, the Defendants' Motion for Summary Judgment, Record Document 31, is hereby **GRANTED** in part and **DENIED** in part.  The Court makes the following rulings:

1. As to Defendant's motion for summary judgment on Plaintiff's due process claim, the Defendant's Motion is **GRANTED** and that claim is **DISMISSED with prejudice**;

2. As to Defendant's motion for summary judgment on Plaintiff's claim under the Police Officer's Bill of Rights, the Defendant's Motion is **GRANTED** and that claim is **DISMISSED with prejudice**.

3. As to Defendant's motion for summary judgment on Plaintiff's claim under Louisiana's whistle blower statute, the Defendant's Motion is **GRANTED** and that claim is **DISMISSED with prejudice**.

4. As to Defendant's motion for summary judgment on Plaintiff's claim under COBRA, the Defendant's Motion is **DENIED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 18 day of February, 2016

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE